UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OYSTER TECHNOLOGIES, LTD, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Civil Action No. 1:11-cv-11795-JLT |
| | * |
| ENVIRONMENTAL DEVELOPERS | * |
| GROUP, LLC, | * |
| | * |
| and | * |
| | * |
| CHARLES GIFFORD III, | * |
| | * |
| Defendants. | * |

MEMORANDUM

December 13, 2011

TAURO, J.

I. Introduction

After a Hearing held on December 8, 2011, Plaintiff's Motion for Preliminary Injunction [#8] is ALLOWED for the reasons set forth below. Plaintiff's Motion for Temporary Restraining Order [#20] is DENIED AS MOOT.

II. Background

    A. Factual Background

On January 16, 2007, Defendant Environmental Developers Group, LLC (EDG) entered into a limited guarantee for a loan of $1,500,000 made by Plaintiff to Defendant EDG's sole member and shareholder Defendant Gifford.[1] The loan was memorialized by a Secured Promissory Note between Defendant Gifford and Plaintiff and a Pledge and Security Agreement

---

[1] Compl. [#1] at 1; Secured Promissory Note [#1-2]

between Defendant EDG and Plaintiff.[2] Both of these documents were executed on the same day the Parties entered into the original loan.[3] On January 16, 2008, the loan amount was increased to $1,875,000, and the maturity date of the loan was extended to June 30, 2010.[4]

As security for the note, Defendant EDG pledged its fifty-percent membership interest in Waste Options, Nantucket, LLC (WON).[5] WON is a Massachusetts LLC, which operates the town landfill on Nantucket.[6] It has two members, EDG and Bedminster, an Irish LLC that is affiliated with Plaintiff.[7]

Defendant Gifford failed to repay the loan to Plaintiff by its stated maturity date and, therefore, Plaintiff asserts that the loan is immediately due and payable.[8] Default under the note also constitutes default under the Security Agreement.[9]

Plaintiff seeks a judgment declaring that the loan default exists and affirming Plaintiff's rights to take transfer of the security for the loan, including EDG's membership interest in WON.[10]

B. Procedural Background

---

[2]Compl. [#1] at 1; Security Agreement [#1-4].

[3]Compl. [#1] at 1; see also Note [#1-2], Security Agreement [#1-4].

[4]Compl. [#1] at 1; Amended Security Agreement [#1-3].

[5]Compl.[#1] at 1-2; Pledge and Security Agreement [#1-5].

[6]Compl. [#1] at 1-2; Scully Aff. [#10] at ¶ 6.

[7]Compl. [#1] at 1-2; Scully Aff. [#10] at ¶ 6.

[8]Compl. [#1] at 6; Scully Aff. [#10] at ¶ 5; see also Gifford Aff. (acknowledging non-payment but alleging that payment was not due.)

[9]Compl. [#1] at 4-6; Note [#1-2] at ¶¶ 7, 9; First Amended and Restated Secured Promissory Note [#1-3] at ¶¶7, 9, 11; Security Agreement [#1-5] at ¶¶ 1, 3, 5.

[10]Compl. [#1] at 7-8.

On October 11, 2011, Plaintiff filed a Complaint for Declaratory Judgment.[11] On October 25, 2011, Plaintiff filed a Motion for Preliminary Injunction with supporting memoranda and affidavits.[12] On November 9, 2011, Defendants filed their Opposition with a supporting affidavit, and on November 29, 2011, with permission of the court, Plaintiff filed a Reply in support of its Motion with a supporting affidavit.[13] That same day, Plaintiff also filed an Emergency Motion for Temporary Restraining Order with supporting memoranda and affidavits.[14] On December 5, 2011, Defendants filed affidavits opposing Plaintiff's Emergency Motion for a Temporary Restraining Order, and on December 9, 2011, Defendants filed an Answer to the Complaint.[15] A hearing was held on both the Motion for Preliminary Injunction and the Emergency Motion for Temporary Restraining Order on December 8, 2011.

III. Discussion

In determining the appropriateness of preliminary injunctive relief, a court must weigh and consider four factors, "(i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of relevant hardships as between the parties; and (iv) the effect of the court's ruling on the public

---

[11][#1].

[12][#8, 9, 10].

[13][#18, 19].

[14][#21, 22].

[15][#23, 24, 25].

3

interest."[16] Courts weigh the first factor, likelihood of success on the merits, most heavily.[17]

In this case, Plaintiff has clearly demonstrated the need for a preliminary injunction.

    A.    <u>Plaintiff Is Likely to Succeed on the Merits:</u>

As reflected in the evidence before the court, this is a simple case of payment default on a note and enforcement of the terms of the guarantee of that note.[18] The record clearly demonstrates that Plaintiff made a loan to Defendant Gifford, and that EDG pledged its membership interest in WON as security for that note.[19] By the terms of the note itself, it is in default and due in full, and Plaintiff is entitled to take transfer of the pledged security – EDG's fifty-percent membership interest in WON.[20]

As Plaintiff correctly points out, it is well established that a lender has a right to enforce such obligations under Massachusetts law.[21] Although Defendants argue that the note is not yet due because of another financial arrangement between the principals behind the two entities that are parties in this case, Defendants have not provided the court with any clear evidence that this is the case.[22] Without more concrete proof that the note is not yet due, the court must conclude that

---

[16] <u>Waldron v. George Weston Bakeries Inc.</u>, 570 F.3d 5, 9 (1st Cir. 2009).

[17] <u>Largess v. Sup. Jud. Ct. for State of Mass.</u>, 317 F. Supp. 2d 77, 81 (D. Mass. 2004) (The "sine qua non of [the injunction standard] is whether the plaintiffs are likely to succeed on the merits.").

[18] See Pl. Mot. Prelim. Inj. [#9] at 11.

[19] See Note [#1-2], [#1-3] Security Agreement [#1-5].

[20] Id.

[21] [#9] at 11, <u>Cmty. Nat'l Bank v. Dawes</u>, 369 Mass. 550, 561 (Mass. 1976) (holding signer of note was "liable to the bank for the debt represented by the note)

[22] Defendants provided the court with a series of emails reflecting a proposed deal that would include forbearance of the payment of the note as compensation for purchase of shares in

4

Plaintiff is likely to succeed on the merits.

B.  The Remaining Factors Weigh in Favor of Injunctive Relief:

Defendant EDG's interest in WON is the only security pledged for the Note, and EDG's guarantee is a "no recourse" guarantee, meaning that Plaintiff may not look to other sources for satisfaction in the event that the pledged security is inadequate to cover the amount due on the Note.[23] Because EDG's fifty-percent interest in WON is the only security for the Note, it is crucial that WON continue to be a sound and viable business, so that it is adequate and available to secure the debt.

It is clear that loss of a pledged security interest poses sufficient risk of irreparable harm to warrant a preliminary injunction.[24] Where there is a risk of loss or destruction of a business entity, courts have held that injunctive relief is appropriate.[25] Here, the record supports Plaintiff's contention that there is a risk of irreparable harm. The record reflects that Defendant Gifford has repeatedly made substantial withdrawals from WON – without authorization – to satisfy private

---

another venture controlled by Defendant Gifford. See Gifford Aff. [#14] Exh. A-C. Although Defendants provided the court with a final contract memorializing the deal (Gifford Aff. [#14] Exh. C.), that contract makes no mention of forgiveness or forbearance of the note.

[23] See Scully Aff., Exh. D (Security Agreement) ¶ 12.

[24] See Micro Signal Research, Inc. v. Otus, 417 F.3d 28, 31 (1st Cir. 2005) ("The possibility that a defendant may not have assets on the day of judgment may not automatically make out a showing of irreparable injury, but the story is quite different where there is a strong indication that the defendant may dissipate or conceal assets." (internal citations omitted)); see also Rodriguez v. Montalvo, 371 F. Supp. 2d 3, 6-7 (D. Mass. 2005) (finding irreparable harm where judgment creditor "would be unable to collect any judgment" absent an injunction).

[25] Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975) (holding that substantial loss of business and possibility of bankruptcy were sufficient for the district court to have found that a risk of irreparable harm existed); Rio Grande Cmty. Health Ctr. v. Rullan, 397 F.3d 56, 76 (1st Cir. 2005) (affirming district court holding that threat to existence of plaintiff's business absent injunction requiring defendant to continue payments amounted to irreparable harm).

debts.[26] Defendant Gifford also promised WON's revenue from the Town of Nantucket as collateral for a private loan to a third party.[27] Defendant Gifford has not only disregarded his previous agreements not to withdraw funds from WON without authorization,[28] but has also pledged WON's principal asset – its revenue stream from the Town of Nantucket – as security for a private debt. These activities constitute a sufficient showing of irreparable harm to warrant a preliminary injunction.

In contrast to the risk of harm to Plaintiff, granting the requested preliminary injunction poses little risk of harm to Defendants EDG and Gifford. As put forth in the accompanying order, the injunction will enable WON to continue to function and carry on its regular business while preserving its assets in the case of a judgment in Plaintiff's favor. This is also in the public interest as WON will be able to continue the operation of the town landfill on Nantucket.[29]

IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is ALLOWED.

AN ORDER HAS BEEN ISSUED.

/s/ Joseph L. Tauro
United States District Judge

---

[26] See Affidavit of Martin Scully ¶¶ 8-17; see also Affidavit of Charles Gifford III, ¶ 25.

[27] See Note Between Defendant Gifford and Sahagian [#10-5] and Contingent Assignment of Payments [#10-6].

[28] See Second Scully Affidavit [#19] ¶ 10, Exh. B (containing WON Financial Records); see also Gifford Affidavit [#14] ¶ 25;

[29] See Scully Affidavit ¶ 6.